UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA HARDY STILES, individually and as a beneficiary under the Edith K. Dahlberg Trust,<br><br>       Plaintiff,<br><br>  vs.<br><br>EDWARD J. WHALEN,<br><br>       Defendant. | )<br>)<br>) 13 C 3516<br>)<br>) Judge Feinerman<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

  Patricia Stiles initiated this suit by filing a complaint and then an amended complaint against the Edith K. Dahlberg Trust, James Hardy in his representative capacity as trustee, and Edward Whalen in his representative capacity as trustee and also in his individual capacity. Docs. 1, 13. After questions were raised regarding subject matter jurisdiction and the possible failure to join necessary and indispensable parties, Doc. 25, Stiles sought and was granted leave to file a second amended complaint, Doc. 35, which is greatly scaled down in terms of claims and requests for relief, and which names only Whalen as a defendant, Doc. 36. Whalen has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). Doc. 37. The motion is denied.

**Background**

  In considering a facial challenge to subject matter jurisdiction under Rule 12(b)(1) or a motion to dismiss under Rules 12(b)(6) or 12(b)(7), the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012) (Rule 12(b)(6)); *Apex Digital Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) (Rule 12(b)(1)); *Davis Cos. v. Emerald Casinos, Inc.*, 268 F.3d 477,

1

479 n.2 (7th Cir. 2001) (Rule 12(b)(7)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the plaintiff's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Stiles as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

A.  **The Trusts and Wills**

Stiles's grandmother, Pauline Kraft, was the beneficiary of and possessed assignment power over a trust created by her deceased husband ("Kraft Trust"). Doc. 36-2 at 1-14. Kraft's will assigned her residuary estate to the Kraft Trust, named two trustees, and instructed them to make various distributions. Doc. 36-2 at 5-6. Kraft's will provided that upon the death of her only child, Edith Dahlberg, the trustees were to "divide the trust estate into equal shares" for each of Dahlberg's then-living children. Doc. 36 at ¶ 2; Doc. 36-2 at 5. Dahlberg had three children: Stiles, Hardy, and Susan Macon. Doc. 36 at ¶¶ 9, 11-12. Dahlberg eventually became co-trustee of the Kraft Trust, but in 2009 her health had deteriorated and Whalen replaced her. *Id*. at ¶ 3; Doc. 36-2 at 16-17.

In the meantime, Dahlberg created the Edith K. Dahlberg Trust ("Dahlberg Trust"), of which Dahlberg was the beneficiary and named trustee. Doc. 36 at ¶ 4; Doc. 36-3 at 1. Whalen and Hardy were to become co-trustees upon Dahlberg's death, Doc. 36 at ¶ 4; Doc. 36-3 at 11, but Dahlberg relinquished her status as trustee and assigned that power to Whalen and Hardy in 2009. Doc. 36 at ¶ 7; Doc. 36-4 at 13. The trust provided for the following distributions, among others, to be made upon Dahlberg's death: $300,000 to each child; $100,000 to the American

2

Baptist Assembly, Green Lake Center, of Green Lake, Wisconsin ("Assembly"); and $250,000 to Lawrence University. Doc. 36 at ¶ 4; Doc. 36-3 at 4. The trust further provided for the following distributions of real property "[a]s soon as it is practical to do so" after Dahlberg's death: Macon was to receive "Kraftwood Lot One and Kraftwood Lot Three"; Hardy was to receive "Kraftwood Lot Two"; and Stiles was to receive the "Kentucky Horse Farm." Doc. 36 at ¶ 4; Doc. 36-3 at 5. In the event the properties had unequal market values, the trust provided for cash payments "so that the total distribution[s] to [the] children … [were] equal." Doc. 36 at ¶ 4; Doc. 36-3 at 5.

Dahlberg executed her final will in 2000; Hardy and Whalen were the executors. Doc. 36 at ¶ 6; Doc. 36-4 at 7. The will allocated Dahlberg's personal property equally among her children and assigned the residuary estate to the Dahlberg Trust. Doc. 36 at ¶ 6; Doc. 36-4 at 7.

### B. Relevant Events

Dahlberg had "a medical event" in May 2007 that rendered her incapable of managing her affairs. Doc. 36 at ¶ 20. Prior to May 2007, Dahlberg had named Hardy and Whalen her attorneys-in-fact in an Illinois Statutory Short Form Power of Attorney for Property form. *Id*. at ¶ 5; Doc. 36-4 at 1. The power of attorney became "effective on [Dahlberg's] incapacity to be determined by written certification of a physician familiar with [her] condition that [she is] unable to transact ordinary business." Doc. 36 at ¶ 5 (emphasis omitted); Doc. 36-4 at 2 (emphasis omitted). No physician ever made that determination. Doc. 36 at ¶ 5. Dahlberg completed a second Illinois Statutory Short Form Power of Attorney for Property form in 2007 after the medical event, Doc. 36 at ¶ 8; Doc. 36-4 at 14, but Stiles alleges that she was not legally competent to do so. Doc. 36 at ¶ 8.

3

After the medical event, Hardy began to control Dahlberg's funds. Hardy opened an account in his name, into which he began depositing funds from the Dahlberg Trust that belonged to Dahlberg. *Id*. at ¶ 24; Doc. 36-4 at 24-28. Hardy also distributed approximately $9,000 belonging to either the Dahlberg Trust or Dahlberg to three charities not named in the trust. Doc. 36 at ¶ 24. Hardy also made interest-free loans from the Dahlberg Trust to Macon and himself for $144,621.21 and $55,000, respectively. *Id*. at ¶ 22; Doc. 36-4 at 19-20. Whalen either was or should have been aware of this conduct. Doc. 36 at ¶ 32.

After Dalhberg died in March 2012, Whalen distributed $300,000 to each of Dahlberg's children, minus portions of what the Dahlberg Trust had loaned to Macon and Hardy, although Macon still owes $94,616.21 on her loan. Doc. 36 at ¶¶ 23, 25; Doc. 36-4 at 22. Whalen intends to distribute the bequests set forth in the Dahlberg Trust to Lawrence University and the Assembly; Stiles objects to these distributions on the ground that Lawrence University and the Assembly already received adequate distributions from the trust after Dahlberg's incapacitation but before her death. Doc. 36 at ¶¶ 15-16, 26. With respect to the real property, Whalen employed unqualified appraisers that undervalued the Kraftwood properties (which had been bequeathed to Macon and Hardy) and accurately appraised the Kentucky Horse Farm (which had been bequeathed to Stiles); this had the effect of reducing or eliminating the "true up" money that would have been due to Stiles under the trust. *Id*. at ¶¶ 30-31. In addition, Whalen refused to transfer to her title to the horse farm. *Id*. at ¶ 34.

Whalen received fees for his work as trustee of the Kraft and Dahlberg Trusts. *Id*. at ¶ 29. At one point, Whalen sought $400,000 in fees from the Dahlberg Trust, but he "changed" that calculation after Stiles's counsel objected. *Id*. at ¶ 27. Whalen wrongfully received some

4

fees before acting as trustee and wrongfully collected fees after his appointment expired, and he never returned the fees to which he was not entitled. *Id*. at ¶¶ 29, 33, 44.

## Discussion

### I. Rule 12(b)(1) – Subject Matter Jurisdiction

Stiles and Whelan have diverse citizenship and the amount in controversy exceeds $75,000, so this case falls within the diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Whalen contends, however, that the jurisdiction that otherwise would obtain under § 1332(a) is defeated by the probate exception to federal jurisdiction. Doc. 37 at 4-6. Whalen is incorrect.

As explained in *Marshall v. Marshall*, 547 U.S. 293 (2006), the probate exception applies in two situations. First, it "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate." *Id*. at 311. Second, in line with "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*," the exception "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court"—that is, from "disturbing or affecting the possession of property in the custody of a state court." *Id*. at 311-12 (internal quotation marks and alterations omitted). The exception "does not bar federal courts from adjudicating matters outside of those confines and otherwise within federal jurisdiction." *Id*. at 312.

To determine whether the probate exception applies, it is necessary to determine the nature of Stiles's claims and of the relief she seeks. *See Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) (in holding that the probate exception did not apply, explaining that "the plaintiff was not seeking to inject the federal court into the administration of the estate and wrest a *res* from the control of another court"); *Three Keys Ltd. v. SR Utility Co.*,

540 F.3d 220, 230 (3d Cir. 2008) (in holding that the probate exception applied, explaining that "not only does Three Keys seek as relief the distribution of probate property, Three Keys also seeks a determination that its interest in the SR Utility shares and dividends is superior to the interest of the Estate"); *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007) (in holding that the probate exception applied to some of the plaintiffs' claims, explaining that "[g]ranting this relief [a declaration that the will in question was invalid and an order divesting the defendants of property obtained under the will] is precisely what the probate exception prohibits," but noting that the plaintiffs "also seek two forms of relief which would not implicate the probate exception"). Count I of the second amended complaint alleges that Whalen owed "fiduciary duties" to Stiles, Dahlberg, and the Dahlberg Trust, and that he "has a duty to account for, and then repay, the Dahlberg Trust the value of the funds and assets wrongfully distributed from the Dahlberg Trust or misappropriated funds belonging to [Dahlberg] during the period [Whalen] was acting in a fiduciary capacity for [Dahlberg], to include any trustee fees wrongfully remitted to him from the Dahlberg Trust or the Kraft Trust." Doc. 36 at ¶¶ 38, 40. The final paragraph of Count I asks the court "to order [Whalen] to account for, and remit to [Stiles], the funds wrongfully distributed or misappropriated which should be available to her in the Dahlberg Trust or the Kraft Trust." *Id*. at ¶ 41. Count II alleges that Whalen breached his fiduciary duties to Stiles, as a beneficiary of the Dahlberg Trust and Kraft Trust, in a variety of ways, and as relief seeks compensatory and punitive damages from Whalen. *Id*. at ¶¶ 42-46. Count III, which seeks punitive damages for Whalen's alleged breach of his fiduciary duties, *id*. at ¶¶ 47-49, is duplicative of Count II and will not be discussed further.

     Stiles's claims do not require the court to probate a will or administer an estate, and nor do they require the court to dispose of property in the custody of a state court; in fact, there are

6

no pending probate or other state court proceedings involving the wills or trusts. *Id*. at ¶ 6. To the contrary, Stiles brings solely *in personam* claims against Whalen, alleging that he breached his fiduciary duty to the trusts, to Dahlberg, and to her, and seeking only an accounting and damages from Whalen personally. Given the narrow ambit of Stiles's claims, the probate exception does not apply. *See Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008) ("The suit, though based ultimately on the will, is not within the probate exception to federal jurisdiction. The judgment sought would just add assets to the decedent's estate; it would not reallocate the state's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate."); *Jones v. Brennan*, 465 F.3d 304, 307-08 (7th Cir. 2006) ("Jones for the most part is complaining simply about the maladministration of her father's estate by the Cook County probate court," which "clearly would violate the probate exception," but "she is also accusing the guardians of having mismanaged the state, and as an heir she many have a claim for breach of fiduciary duty."); *Wisecarver*, 489 F.3d at 750-51 (holding that the probate exception did not bar *in personam* claims alleging that "the defendants received assets … by misusing the Power of Attorney … in their favor and that Plaintiffs were damaged as a result"); *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 847-48 (6th Cir. 2006) (holding that the probate exception did not apply because the plaintiff's "claim involves only an action in personam regarding her revocable trust, an inter vivos trust that is unrelated to any probate proceedings," and because she did not "ask[] the federal court to take custody of property away from state court to determine the rights of interested parties in that property"); *Downey v. Keltz*, 2012 WL 280716, at *2 (N.D. Ill. Jan 31, 2012) ("an *in rem* action in federal court involving the same *res* that a state court is exercising jurisdiction over is inappropriate, but an *in personam* action in federal court related to the state action may proceed").

7

**II.     Rule 12(b)(7) – Failure to Join Necessary and Indispensable Parties under Rule 19**

Whalen seeks dismissal under Rule 12(b)(7) because Stiles has not joined in this case all other beneficiaries of the Dahlberg Trust—Hardy, Macon, the Assembly, and Lawrence University—whom he asserts are necessary and indispensable parties under Rule 19. Doc. 37 at 2-4. Whalen is incorrect, as the other beneficiaries are not Rule 19 parties.

Analysis under Rule 19 is bifurcated. First, the court determines under Rule 19(a) whether "a person" (which can be a natural person or an entity) is necessary—or, in the Rule's terms, whether the person is "required to be joined if feasible." Fed. R. Civ. P. 19(a). A person is necessary if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1); *see Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999). Second, if a person is necessary under Rule 19(a) but cannot be joined, the court must determine under Rule 19(b) whether the person is indispensable—or, in the Rule's terms, "whether, in equity and good conscience, the action should proceed among the existing parties" without the necessary person "or should be dismissed." Fed. R. Civ. P. 19(b); *see Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). Whalen bears the burden of demonstrating that the other beneficiaries are necessary and indispensable under Rule 19. *See Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359, at 67 (3d ed. 2004) ("The cases make it clear that the burden is on the party moving under Rule 12(b)(7) to show the nature

of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence.").

Whalen contends that the other beneficiaries are "necessary" under Rule 19(a) "because [Stiles], notwithstanding her repeated efforts to disguise her allegations, is still trying to use these proceedings as an instrument to reduce all of their respective bequests under the Dahlberg Trust and arrogate those amounts to herself." Doc. 37 at 2-3. Whalen's argument is not unreasonable, as the second amended complaint conceivably could be read as asking the court to require Whalen to claw back the allegedly improper distributions already made to the other beneficiaries or to collect interest from Macon and Hardy for the allegedly interest-free loans, to compel Whalen to make further payments from the Trust to Stiles, or to prohibit Whalen from making certain future distributions to the other beneficiaries. If the second amended complaint indeed sought such relief, the other beneficiaries might be necessary parties. *See Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1150 (7th Cir. 1979) (holding that certain beneficiaries were necessary parties in a case brought to extinguish a trust, reasoning that a "judgment in favor of termination would not only impair their ability to protect that interest, but might actually operate to terminate their interest"). But the complaint is better read as a simple *in personam* suit, one asking the court to require Whalen to pay damages to Stiles or the Trusts as reimbursement for the allegedly wrongful payments that he has already made to himself and that he has already made or allowed to be made to the other beneficiaries. Stiles's brief confirms that this is the proper reading of the complaint. Doc. 47 at 12 ("[Unlike] *Wech v. Byrne, Goldenberg & Hamilton, PLLC*, 910 F. Supp. 2d 162 (D.D.C. 2012), [where] the plaintiff and the absent beneficiary both assert[ed] 'opposing, irreconcilable' claims to a particular portion of settlement proceeds paid to the estate, … Stiles's claim against Whalen … seeks damages only against him.

She does not seek recovery of a specific part of the Trust corpus."); *id*. at 13 ("While Whalen makes the unsupported statement that Stiles has somehow disguised her claim to 'redistribute' bequests as one for breach of fiduciary duty, the [second amended complaint] plainly alleges that Whalen owed specific duties to Stiles as a beneficiary of the Trust, and that he has breached those duties. This case is not, as Whalen contends, an effort to redistribute [the trust].") (internal quotation marks omitted); *id*. at 17 ("Stiles seeks an *in personam* judgment [against] Whalen.").

Given the nature of the second amended complaint's claims, the other beneficiaries of the Dahlberg Trust are not necessary parties under Rule 19(a). *See Godfrey v. Kamin*, 194 F.R.D. 627, 630 (N.D. Ill. 2000) ("Plaintiffs are not requesting any relief that will augment or deplete the trust, but are instead suing to recover compensatory damages from former trustees for not administering the trust in a way that benefitted them and for withholding material information from them.") (footnote omitted). And because they are not necessary parties under Rule 19(a), there is no need to determine whether they are indispensable under Rule 19(b). Consistent with Stiles's and the court's understanding of the second amended complaint as being limited to seeking damages solely from Whalen and solely for his prior actions or distributions, the court will not permit any attempt by Stiles to expand this case to encompass any claim that Whalen *would* violate his fiduciary duties to her or the Trusts *if* he were to make particular *future* distributions to any of the other beneficiaries. Any such attempt not only could make the other beneficiaries into Rule 19 parties, but also could bring this case or parts thereof within the probate exception to federal jurisdiction.

## III.   Rule 12(b)(6) – Failure to State a Claim

Finally, Whalen contends that the second amended complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. Again, he is incorrect.

Count II alleges that Whalen breached his fiduciary duties as trustee. "Under Illinois law …, recovery for a breach of fiduciary duty requires proof of three elements: '[1] a fiduciary duty exists, [2] that the fiduciary duty was breached, and [3] that such breach proximately caused the injury of which the plaintiff complains.'" *Gross v. Town of Cicero,* 619 F.3d 697, 709 (7th Cir. 2010) (alterations in original) (quoting *Neade v. Portes,* 739 N.E.2d 496, 502 (Ill. 2000)); *see also Chi. City Bank & Trust Co. v. Lesman,* 542 N.E.2d 824, 826 (Ill. 1989) ("A cause of action for breach of fiduciary duty must set forth allegations … that a fiduciary relationship existed between the parties, that the trustee owed certain, specific duties to the plaintiff, that the trustee breached those duties, and, that there were resulting damages."). Whalen challenges the second and third elements. Doc. 37 at 7-12.

With respect to the second element, Count II alleges—and it bears repeating that the allegations are merely allegations, which the court must credit at this stage of the case—that Whalen breached his fiduciary duties as a trustee by failing to manage the Dahlberg Trust according to its terms and in Stiles's best interests, by failing to collect interest on the loans made to Macon and Hardy, by allowing Hardy to make unauthorized distributions to charities like the Assembly and Lawrence University, by paying himself excessive fees, by employing an unqualified appraiser to value the properties, and by misappropriating funds from Dahlberg and the Dahlberg Trust. Doc. 36 at ¶¶ 21-22, 24, 29, 33, 41-44, 46. These allegations plausibly assert breaches of the fiduciary duty a trustee owes to a trust and its beneficiaries under Illinois law. *See* Restatement (Third) of Trusts § 78 (2007) ("a trustee has a duty to administer the trust solely in the interest of the beneficiaries"); *In re Estate of Muppavarapu*, 836 N.E.2d 74, 77 (Ill App. 2005) (same); Restatement (Third) of Trusts § 76 ("The trustee has a duty to administer the trust, diligently and in good faith, and in accordance with the terms of the trust and applicable

11

law."); *Herlehy v. Marie V. Bistersky Trust Dated May 5, 1989*, 942 N.E.2d 23, 39 (Ill. App. 2010) ("A trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust *according to its terms* and to act with the highest degrees of fidelity and utmost good faith.") (internal quotation marks omitted); Restatement (Third) of Trusts § 79 ("A trustee has a duty to administer the trust in a manner that is impartial with respect to the various beneficiaries of the trust"); *S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919, 923-24 (7th Cir. 2003) ("It is fundamental that when there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them.") (internal quotation marks omitted); *Comtrade, Inc. v. First Nat'l Bank of Highland Park*, 497 N.E.2d 527, 529 (Ill. App. 1986) ("When there are multiple beneficiaries named in the trust or escrow agreement, a trustee is under a duty to deal impartially with each of them. It is well settled that when there are conflicting claims between beneficiaries, a trustee who ignores the demands of one beneficiary in order to comply with the demands of another will be held accountable for its actions.") (citation omitted).

Whalen responds that a section of the trust stating that "[n]o individual trustee shall be liable for any loss resulting from any act, or failure to act, in good faith," Doc. 36-3 at 11, shields him from liability because he acted in good faith. Doc. 37 at 8. Exculpatory clauses in trusts are generally enforceable. *See Metz v. Independent Trust Corp.*, 994 F.2d 395, 400 (7th Cir. 1993). The complaint, however, alleges that Whalen intentionally breached his fiduciary obligations, which is inconsistent with acting in good faith. Doc. 36 at ¶¶ 29-30, 33, 44. The question whether Whalen performed his duties in good faith presents an issue of fact that cannot be resolved on a motion to dismiss. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594 (7th Cir. 2007) ("as a general rule, a party's state of mind … is a question of fact for the

Case: 1:13-cv-03516 Document #: 54 Filed: 12/20/13 Page 13 of 16 PageID #:435

factfinder, to be determined after trial") (internal quotation marks omitted); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (holding that a qualified immunity defense is fact-dependent and thus usually is not an appropriate ground for dismissal); *Carter v. Chi. Police Officers*, 165 F.3d 1071, 1081 (7th Cir.1998) ("Whether conduct is willful … is ultimately a question of fact for the jury.").

Whalen also argues that another exculpatory provision of the trust, one stating that "[n]o trustee shall be accountable for any act or default of another trustee," Doc. 36-3 at 13, shields him from liability for Hardy's actions. Doc. 37 at 9. But as Whalen concedes, Doc. 37 at 8, a trustee's "abuse of discretion" or "bad faith" may overcome this provision. *See Metz*, 994 F.2d at 400 ("Although exculpatory provisions do not enjoy special favor in the law, if they are inserted in a trust instrument they are generally held effective except as to breaches of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary.") (internal quotation marks omitted) (emphasis and alterations omitted); *Carter v. Cater*, 965 N.E.2d 1146, 1153-54 (Ill. App. 2012) (holding that exculpatory clauses do not cover actions "by the trustee that are outside the bounds of reasonable judgment"). And again, bad faith is plausible given the complaint's allegations, meaning that it cannot be said on the pleadings that the exculpatory clause excused Whalen of his duty "to prevent a co-trustee from committing a breach of trust." Restatement (Third) of Trusts § 81; *see id.* at cmt. e ("A trustee is not liable for a breach of trust committed by a co-trustee, unless the trustee: (i) participated or acquiesced in the breach of trust or was involved in concealing it; (ii) improperly delegated administration of the trust to the co-trustee; or (iii) enabled the co-trustee to commit the breach of trust by failing to exercise reasonable care, including by failing to make reasonable effort to enjoin or otherwise prevent the breach of trust."); *Winger v. Chi. City Bank & Trust Co.*, 67

N.E.2d 265, 277 (Ill. 1946) ("equity … will not permit one trustee to sit idly by and acquiesce in the fraudulent actions of another trustee").

With respect to the third element of Stiles's fiduciary claim, injury, Whalen's alleged breaches of his fiduciary duties plausibly caused damages by reducing the value of the Dahlberg Trust and Stiles's share thereof. Many of the alleged violations—the interest-free loans, the early distributions, Hardy's personal use of trust funds, and the excessive and undue fees—directly reduced the Trust's value. The allegedly unqualified appraiser who allegedly undervalued the Kraftwood properties reduced Dahlberg's distribution due to the Trust's true-up provision. Doc. 36 at ¶¶ 4, 30; Doc. 36-3 at 5. Given these allegations, the complaint adequately pleads that Whalen's conduct damaged Stiles.

Count I requests an accounting. To state an accounting claim, a plaintiff must allege: "(1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005); *see also ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003) (same); *Mann v. Kemper Fin. Cos., Inc.*, 618 N.E.2d 317, 327 (Ill. 1992) (same). An accounting plaintiff ordinarily must also allege that she has no adequate remedy at law, but Illinois law carves an exception for "accounting action[s] … based upon a breach of fiduciary duty so that a plaintiff may proceed with the action." *Mann*, 618 N.E.2d at 327; *see also Kurtz v. Solomon*, 656 N.E.2d 184, 192 (Ill. App. 1995); *3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000). Because Stiles adequately pleads a fiduciary duty claim, and because the accounting claim is pleaded in aid of the fiduciary duty claim, the accounting claim may proceed regardless of whether Stiles has an adequate remedy at law. *See Kurtz*, 656 N.E.2d at 192; *Unichem Corp.*

*v. Gurtler*, 498 N.E.2d 724, 731 (Ill. App. 1986); *Pentech Phamaceuticals, Inc. v. Par Pharmaceutical, Inc.*, 2004 WL 2390088, at *5 (N.D. Ill. Oct. 21, 2004); *Cafcas v. DeHaan & Richter, P.C.*, 699 F. Supp. 679, 684 (N.D. Ill. 1988).

Finally, Whalen argues that the second amended complaint's request for punitive damages on the fiduciary duty claim should be stricken. Doc. 37 at 12-14. "Illinois courts have made clear that punitive damages are available for breaches of fiduciary duty." *LM Ins. Corp. v. Spaulding Enters Inc.*, 533 F.3d 542, 551 (7th Cir. 2008); *see also Franz v. Calaco Development Corp.,* 818 N.E.2d 357, 375 (Ill. App. 2004) ("Punitive damages are available as a matter of law for a breach of fiduciary duty"). Whalen argues, however, that punitive damages are barred by 735 ILCS 5/2-1115, which provides that "[p]unitive damages not recoverable in healing art and legal malpractice cases." Although Whalen is a lawyer, the complaint alleges not that he committed legal malpractice, but that he breached his fiduciary duties as a trustee. The statute therefore does not apply here. *See Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1266 (Ill. App. 2008) ("actions for legal malpractice and breach of fiduciary duty are conceptually distinct"); *Rose v. MONY Life Ins. Co.*, 2001 WL 214200, at *4 (N.D. Ill. Mar. 2, 2001) ("it is possible, under Illinois law, to properly plead a cause of action for malpractice and a separate action for breach of fiduciary duty").

## Conclusion

For the foregoing reasons, Whalen's motion to dismiss is denied. Whalen shall answer the second amended complaint by January 10, 2014.

December 20, 2013

United States District Judge